# CASES ARGUED AND DECIDED

—— IN THE ——

# SUPREME COURT OF MISSISSIPPI,

—— AT THE ——

## OCTOBER TERM, 1903.

STATE EX REL. EARL BREWER, DISTRICT ATTORNEY, *v.* RICH-
ARD F. ABBAY ET AL.*

1. PRIMARY ELECTION. *Laws 1902, ch. 66, p. 105. Executive committee.
   Mandamus. Recanvas of returns. Defeated candidate.*

   A defeated candidate for a nomination, under the primary elec-
   tion law (Laws 1902, chap. 66, p. 105), having knowledge of the
   facts which he claims rendered the successful candidate ineligi-
   ble, who fails to present them to the executive committee of the
   party at the time it meets to canvass the returns and declare
   the result, cannot because of such facts afterwards, by manda-
   mus, compel the committee to reassemble and review its con-
   clusion, although section 14 of said law requires the committee
   to investigate and correct wrongs in a primary election.

2. SAME. *Nominations declared. Legality of votes adjudicated.*

   Where the party executive committee, under said law, declares a
   candidate the party nominee it necessarily adjudicates as legal
   the votes cast for him.

FROM the circuit court of Tunica county.

HON. SAMUEL C. COOK, Judge.

The state, on the relation of Earl Brewer, district attorney,
was the plaintiff in the court below. Richard F. Abbay, chair-
man, and other members of the Democratic Executive Commit-

---

* This was the first case decided in the new capitol, the building, the erection of which
was begun January 1, 1901, and into which the state officers were moved in September, 1903.

(559)

tee of Tunica county, were defendants there. The suit was a proceeding for a mandamus to compel Chairman Abbay and the other members of the committee, appellees, to reassemble and recount the votes which had been cast at a primary election in Tunica county for candidates for the democratic nomination to the office of county treasurer of said county.

At said election there were but two candidates for the nomination to said office, one Tucker and one Robertson. The petition averred that Tucker was ineligible to receive said nomination because he was a member of the executive committee of the democratic party, which was holding the primary election; that after the election the democratic executive committee met, though it is not averred that Tucker attended the meeting, and that a majority, without canvassing the votes cast, had accepted the returns of the election managers and had adjudged that Tucker received more votes at the primary election than Robertson, and had declared Tucker to be the democratic nominee for said office. The petition prayed that the democratic executive committee of the county be compelled to reassemble and investigate the matter of fact as to whether Tucker was ineligible to be nominated because he was a member of the democratic executive committee of the county, and if it should be found that he was ineligible, that the committee then be required to declare Robertson the democratic nominee for said office. To this petition there was a demurrer on the grounds following: First, that the committee was shown to have already performed its duties. Second, that the committee had no power to reject votes which were counted by the election managers, and third, that there is no law making votes cast for an executive committeeman illegal. The court below sustained the demurrer and rendered a final judgment dismissing the petition and the plaintiffs appealed to the supreme court.

*Calvin Perkins,* for appellant.

The record in the case at bar shows that there were only

twelve executive committeemen, and there were more than twelve county offices for which candidates were to be nominated. Now, if one executive committeeman had the legal right to be a candidate for nomination to an office at that election, all of them had that right, and what a travesty it would be on the efforts of the legislature to "secure fairness in party primary elections" if it should turn out that it has passed a law which permits this to be done.

When the primary election law provides that the county executive committee shall discharge the functions imposed upon the election commissioners, and makes that provision in the same section of the act in which it had already been provided that the primary election "shall be governed and regulated by the election law," it thereby, in terms, says that both of the regulations contained in section 3634 of the code shall be applicable to the county executive committeemen.

It is altogether unnecessary, for the solution of the question under discussion, to determine whether the section of the code named is a penal statute or not. If it be a penal statute and applies a penalty to commissioners of election, then, in the language of section 1 of the primary election law a like penalty is placed upon executive committeemen, because the words of that act are that executive committeemen "shall be subject to all the penalties to which county election commissioners are subject." If it be not a penal statute, then it must be liberally construed, because looking at "the entire legislation on the subject-matter, its policy and reason, as well as the text," it is within the "scope and object, spirit and meaning" of the primary election law that executive committeemen shall be ineligible as candidates, and that all votes cast for them shall be illegal and shall not be counted. Or, to put it more succinctly, if the section of the code under consideration be a penal statute, it is within both the letter and the scope of the primary law, and if it be not a penal statute, then it is within the scope, although not within the let-

er, and in either event must be construed as applicable to the executive committee.

Even the election commissioners, with their restricted powers, were held in *Oglesby* v. *Sigman,* 58 Miss., 502, to be authorized to go behind the returns to the extent of rejecting any ballots which, upon their face, appeared to be illegal, and most clearly, under section 14 of the primary election law, the executive committeemen are not mere ministerial officers, and not merely *quasi* judicial officers, but are authorized and required to hear evidence whether unauthorized persons have been permitted to vote, whether illegal ballots have been cast, and whether any act has been done in relation to the primary election by which any fraudulent result has been obtained, and after such hearing to correct the wrong. "To hear evidence and correct the wrong" is a strictly judicial function, and by said section 14 the county executive committee is made a court with plenary powers as to the subjects in that section enumerated—viz.: whether unauthorized persons have been permitted to vote, illegal ballots cast, or any act done with regard to the primary election by which any fraudulent result has been obtained. Not only is it a court with full powers to hear and determine, but it is also made the court of last resort—no appeal is given.

But it is argued that the petitioner was not entitled to the writ of mandamus, because it appeared on the face of the petition that the executive committee had canvassed the returns and determined and declared the result. The allegations of the petition are very distinct and clear that there was no canvass of the returns.

The error of counsel for appellees, on this point, consists in assuming that when section 6 of the primary election law provides that the executive committee "shall receive and canvass the returns," the word "returns" has reference only to "the result of the election in the several election districts, certified and signed by the managers and clerks." There is nothing in

the primary election law itself defining the meaning of the word "returns" in this context, but as that election is to be "governed and regulated" by the general election law, we must look to the general election law for the definition.   Code 1892, § 3670.

Evidently the committee did not know that it was a court, vested by said section 14 with plenary powers, to hear evidence and right the wrong, or, if they did not know. it, they violated their duty in assuming to act as mere ministerial officers, with no power except to add up the results of the election as certified to them by the managers and clerks, and announce the names of the nominees arrived at by such summing up.

It is also argued that the demurrer ought to be sustained, because, it was alleged, the petition did not aver that Tucker was present and participated in the canvass of the returns by the executive committee. . The language of the petition is: "He acted as such with reference to the said primary election." This is substantially the language of the statute. · Code 1892, § 3634.

It is also argued that the application to correct the wrong came too late, but it can never be too late until after the executive committee has canvassed the returns, or until after the time fixed for printing the ballots for the general election.   The only limitation fixed in section 14 of the primary election law is that the executive committee shall "promptly investigate and correct the wrong." · The time to correct the wrong is while the canvass is progressing, and certainly an application for such correction is in ample time if it is made before the canvass has been commenced.


*F. A. Montgomery, Jr.,* for appellees.

The first question presented in this case is: Can the democratic executive committee of a county be compelled, in any case, to reassemble and canvass the returns of a primary elec-

tion and reannounce the result, and redeclare the nominee of the party, when it has already assembled at the time and place required by law, and from the returns has declared the result, and announced the nominee of the party?

The petition in this case shows that the committee met at the time and place required by law, that there was delivered to them by the proper authorities at the time and place the tally lists, tally sheets, lists of voters, poll books, ballots, and ballot boxes; and that on motion, duly seconded, they accepted the tally lists, which was the statement of the result at the several voting precincts, as correct; and on those declared the result.

It is clearly shown by the petition that Tucker received a very large majority of the vote cast, and that he was declared the nominee.

. These facts, that he was nominated, that the committee had declared him the nominee, at the time and place required by law, are not disputed by this petition at all. That the committee has acted in the matter, and finally acted, is fully shown by the petition.

Can they, therefore, now, even if they have reached their result by a misunderstanding of the law, or have declared a man nominated who was not entitled to be nominated, be compelled by mandamus to reassemble and undo what they have done and declare another man nominated? 10 Am. & Eng. Enc. Law, 746, 747, 748, 749, 750, 751; *Oglesby* v. *Sigman,* 58 Miss., 502; High on Extraordinary Legal Remedies, secs. 49, 50, 53.

But it is argued by the counsel for the appellant, that section 14 of the primary election law, conferred upon the executive committee certain judicial functions; and that to that extent they are not ministerial but judicial officers. And that the question of the eligibility of Tucker to be nominated for county treasurer was a judicial question which they should decide. And, therefore, as they have not decided this question either way they can be mandamused to meet and do so.

If it be true that Tucker was ineligible to the nomination, and that the ballots cast for him were illegal and should not be counted, and if the executive committee had the authority to hear and determine this question, yet they cannot now be compelled to reassemble and consider an objection which was not made at the meeting of the committee.

Mandamus will not lie to compel judicial discretion of an officer. *Swan* v. *Gray,* 44 Miss., 393.

WHITFIELD, C, J., delivered the opinion of the court.

Whilst it is true that the petition avers that the executive committee made no canvass of the returns, other averments of the petition show that the executive committee, besides ratifying what the election officers did, tabulated and added up the votes cast for Tucker and Robertson, respectively, and declared Tucker the nominee. The very gist of the complaint is that the executive committee did not declare the votes cast for Tucker legal or illegal, and did not refuse to count them. But we think it clear that the act of declaring Tucker the nominee, after tabulating and adding the votes, necessarily involved a declaration that the votes cast for Tucker were legal. How could they have declared him the nominee without finding the votes cast for him to be legal? What the petition prays for is, in effect, that the executive committee be commanded to reconvene, to hear the evidence on the single point whether Tucker was a member of the executive committee, and acted as such, and, if he did, to declare the votes cast for him illegal, and not count them. The very essence of the prayer is that the executive committee shall declare the votes cast for Tucker illegal, and not count them. But it is perfectly obvious from the averments of the petition that Tucker was a member of the executive committee; that he did act as such; that the executive committee were bound to have seen, upon the face of the returns, exactly how many votes were cast for him; and that, in full view of this knowledge,

they nevertheless declared him the nominee.  There is necessarily involved in this action the finding of the executive committee that those votes were legal, and it logically follows that the real complaint is not so much that the executive committee have failed to decide whether the votes cast for Tucker were legal or illegal, as that they did decide that those votes were legal, and that that was wrong; and plainly this would be to employ the writ of mandamus, not to compel action, but to control discretion in acting.

There is another fatal objection to the granting of the writ. The application came too late.  Taking all the provisions of the law together, the scope and intent require, ordinarily, that the complaining party shall present his evidence and make his objections at the first meeting of the executive committee after the primary election.  The committee is directed "promptly" to "receive evidence and correct wrongs."  The very nature of the case requires prompt action all round.  The intent of the law is that none but eligible candidates shall appear on the party ticket, so as to avoid confusion later, and that whatever inquiry is had shall be had at the first appropriate time, to wit, the first meeting of the executive committee after the primary election has been held.  It seems clear from the averments of this petition that Robertson knew everything touching the elegibility of Tucker quite as well before the primary election was held as afterwards, and yet not a single objection was made— no evidence was offered by him to be introduced—at the meeting of the executive committee.  No excuse was shown, none existed, why he should not have offered his evidence to prove that Tucker was a member of the executive committee at the first meeting of the executive committee, and why he should not have then interposed his objections based on his ineligibility.  That was the time for the executive committee to have "received his evidence and corrected any wrong" complained of, if any existed.  Yet he waited until about twenty days after

the primary election before filing his petition for this writ. We will not be understood as saying that there may not be cases in which, after the first meeting of the executive committee has been held, the writ may be used to compel the executive committee to reconvene to receive evidence and to correct wrongs. There may occur cases in which the complaining party may not have known, with the exercise of all reasonable diligence, of the fraud or illegal act vitiating the election; and it must be conceded that the power conferred upon the executive committee of the county for the correction of wrongs in a primary election are much broader than those conferred by the old law on the election commissioners for the very obvious reason that in case of an election the law provides a mode for contesting the result of that election, and that it is in that contest that the wrongs and frauds committed are to be corrected. But in the case of a primary election there is no tribunal vested with power to determine who is to be the party nominee—to correct the wrongs and frauds bearing upon the solution of that question—save only the executive committee of a county. However it may be in the case of a complaining party who had no knowledge of the wrong or fraud until after the executive committee had met, it is certain that the intent and scope of the act require, in the case of one who did have such knowledge, that he shall make his objections and offer his evidence at the first meeting of the executive committee of the county after the primary election has been held.

*It results that the judgment must be affirmed.*